Case 23-1866, Charles Jones v. Kent County, MI et al. Argument not to exceed 15 minutes per side. Mr. Richtersick, you may proceed for the appellants. Good morning, your honors. Brian Richtersick on behalf of the defendant's appellants in this case, including Melissa Furness, Chad Goederman, and James Molo. Nurse Furness and Goederman were charge nurses in this case. Nurse Molo was an LPN and the LPN's essential role in this particular matter was to do a med pass and to check in on certain patients. This case involves a 40-year-old male who was incarcerated during the time in question at Kent County Correctional Facility. After his arraignment, he showed up at the jail and apparently drunk, but didn't appear so at the beginning because he was a chronic alcoholic and apparently could handle these things fairly well. But it became apparent after some time, he was observed hallucinating, falling down, confused. On the second day, this is April 25, 2018, so by the third day, he was brought to the nursing staff's attention. In this particular instance, Nurse Furness. And so they ensured that this patient went on an alcohol withdrawal protocol and it was seen regularly by nursing staff. And I think the record bears that out, that the patient was seen regularly. There were CEWA scores conducted determining the severity of any withdrawal from alcohol at the time. On occasion, vitals were taken. The focus of my argument today, though, I want to make how the verdicts in this case are pretty inconsistent. When I say the verdicts, I'm referring primarily to the verdicts against these three persons, Molo, Furness, and Goederman. In addition to Nurse Practitioner Sherman. Nurse Practitioner Sherman, who was found not liable on the deliberate indifference claim. There's two claims in this case. Deliberate indifference, medical malpractice. The medical malpractice claim never went to the jury against Sherman because there was a lack of expert support. So only the deliberate indifference. And the deliberate indifference claim, the jury found that she wasn't, her actions weren't deliberately indifferent. And that also, I guess, weren't a proximate cause of any harm since she wasn't deliberately indifferent. At the same time, they found that Furness, who had the most interaction, it seems, prior to the final day. There's April 26th and April 27th. April 26th is when the patient becomes somewhat severe. Morning of April 27th, Nurse Furness communicates with Nurse Practitioner Sherman, who's the medical provider. And they put her, they order that the patient should be taken to the jail infirmary for closer observation. And that's done. So at all times, we've got Nurse Furness reporting to the Nurse Practitioner and following the orders and directions of the Nurse Practitioner. The Nurse Practitioner, the verdict is not deliberately indifferent for similar actions. But yet, the jury determined that Nurse Furness was deliberately indifferent. And that her- That's part of the issue there, that the decision by the nurse in charge was made on the telephone based on information that Nurse Furness told her. Right? That's correct. And so, if she was not, if Furness failed to give her the information that was needed, then she may not in fact be deliberately indifferent in what she chose to do. Whereas Nurse Furness had a different knowledge base and did not act on it. That's a possibility. So that's within the jury's right to decide, right? But the inconsistencies in this case are a bit of a tangled web. Because it involves, in part, the jury's verdict on certain claims at certain time frames. It involves two directed verdict motions. One at the close of Plaintiff's cardiology expert's testimony. And then a second directed verdict brought at the close of all proofs. And so, you kind of have to go through each one, what happened on those three occasions. And mesh them together to determine why is there inconsistencies here. It's not just one thing. It's all of them together. So, for example, if we go way back to the motion for summary judgment, there was testimony by Plaintiff's cardiology expert that as to the medical malpractice claim, after 6 o'clock in the morning on the final date, the opportunity to survive was less than 50%. Therefore... It doesn't apply to the deliberate indifference claim, correct? I agree. I agree. But I'm getting, that's why I'm saying this is a tangled web. It makes it very, it makes a very different inconsistent, or it makes it problematic for your inconsistency argument. Because even if you have in medical malpractice a timing problem, and maybe you fail on the medical malpractice because of the timing, and this is assuming it was appropriately raised, you don't have that problem in deliberate indifference. Well, so that moves us on to the next piece of testimony during trial of the same expert, where he testified that as of 5 o'clock on the final date, the condition was irreversible. It was certain he was going to die. That was his testimony to Plaintiff's counsel during trial. So if you take that by itself, without any cross or anything, and look at that, we know then that he was certain to die at 5 a.m. on the final day. There could be no... But didn't Dr. Fentel resolve that and explain very specifically that his likelihood of survival was less than 50% because he was sent to the infirmary rather than to the hospital? So I believe you're referring to the cross-examination... Well, actually redirect. Does it matter? It's all evidence in the record. Exactly. He answers a question accurately in his estimation about the time period to save his life, and then when asked, he explains how it works. And how it works is that he believed this man was going to die if he stayed in that jail, and he was correct. And he believed and testified from his expertise that had he been taken, had Jones been taken to the hospital, he would have survived. So that's... But the judge, when he dismissed all the medical malpractice claims after 5 o'clock, it was on the basis that it was irresistible. And the motion, the order denying motion for J&OB or new trial, then he caught his mistake. But he had already dismissed everybody on the basis of after 5 o'clock, you can't determine that these people were medically negligent because of the testimony of the doctor that it was irreversible. And I get what you're saying about the cross-examination. That's a statutory issue in Michigan, right? Pardon? That's a statutory issue. Correct. The Michigan statute requires... He has a statute and he makes the determination on that claim, put that claim aside and just look at deliberate indifference. Right. So... That was where the jury actually appeared to really understand that distinction. No, this is not within the medical malpractice field, and we're saying it's not, but it is in fact within deliberate indifference, and that was what these defendants were found guilty of. But if you look at Nurse Molo, okay? Nurse Molo's only involvement that went to the jury concerned her activity after 5, when she was assisting Nurse Goederman. And the jury determined that concerning that activity... Well, concerning the activity before 5, she wasn't negligent, and her actions weren't a proximate cause of harm, but concerning... But during the same time, her actions were deliberately indifferent. How could your actions be deliberately indifferent if you weren't negligent? Because deliberate indifference subsumes negligence. Well, deliberate indifference is a state of mind that is further than negligent. What deliberate indifference is is that you have a mentality, you have an intentionality, and that was what the jury found. They said, put aside medical malpractice and that statute. We find that these people had knowledge of a danger and chose not to act, and that is a distinct state of mind. Except with... I would disagree to the extent that in a deliberate indifference claim versus a medical malpractice claim, if you're deliberately indifferent... If you're the defendant in a deliberate indifference claim and you complied with the standard of care, in this case, what the average nurse would do under the same or similar circumstances, if you complied, then you couldn't be deliberately indifferent because, in essence, you complied with the standard of care. How could you be deliberately indifferent and harm a person if, at the same time, you've complied with the standard of care? And that's, in essence, what they said, that Molo wasn't negligent, wasn't negligent, didn't engage in professional malpractice, but the same action and the same activities were deliberate indifference. That's an inconsistency in and of itself, and you can't have that. I've got a question here. First of all, isn't Molo a man? It's James Molo, isn't it? Sure. It's not she. I stand corrected. Okay, but what about the fact that you never filed a motion under Rule 49 to bring out this inconsistency before the jury was discharged? Haven't you forfeited your inconsistency argument? Well, I would argue that there is case law that we cite in our brief that says if verdicts are inconsistent, then you must either do a J&OV or a new trial. The case that's cited in the brief talks about a trucking company who there's four different verdicts in that case, and they don't file a Rule 49 motion beforehand, and inconsistent verdicts are determined. And in that case, it didn't determine them for some time after. I think it was months or even a year after. But you didn't raise this in a 50A and a 50B either. First of all, just to clarify. We could look at it as inconsistent verdicts. We could look at it as insufficiency. Either way, I don't know how it's preserved. Because the directed verdict motions determined that there was no proximate cause for a medical malpractice claim after 5 a.m. in the morning. And that was based on the testimony of Fintel that he wouldn't survive, he could not survive after 5 o'clock. And so if the jury understood that, then it's the same proximate cause argument for deliberate indifference. And I would argue that's the only way it's preserved. In fairness, I wasn't the trial counsel. I acknowledge there wasn't a Rule 50 motion. I acknowledge these things. Those are part of the record. So how did they preserve the argument? One, because of the inconsistent verdicts. We can raise it for the first time in the J&OV or Motion for New Trial. And two, in the directed verdict motions. That's the only way they could have preserved those. Because I agree, there wasn't a specific motion on the issue. If there's no questions, I guess my time's up. Yes, thank you. You'll have your rebuttal. All right, thank you. Good morning. May it please the Court. My name's Robert Kamenek. I represent the plaintiff aptly in this case. Let me start with some of the questioning that was made here because there is more waiver and forfeiture in this case than Carter has pills. Let's start right off the bat with inconsistent verdicts. The rule is pretty clear, and let's go into the reasoning for it. You've got to make an objection and notice it before the jury's discharged. That's the whole purpose of the rule. Because if the jury's still there and the court has questions about how it worked, the court can try to clarify it with the jury still there. But once the jury's gone, you can't do that because the jury's been discharged. So all the inconsistent verdict new trial motions have been waived. And if the court will recall from the briefing, there are two. One is inconsistent with respect to a finding of deliberate indifference by way of culpability versus medical malpractice, and one is on proximate cause, arguments one and two respectively. And also a couple of matters that procedurally I hope we can get clarified right off the bat. Inconsistent verdicts, if it was preserved, the appropriate relief, if at all, is new trial. It doesn't come under the umbrella of J&OV. So requesting J&OV for an inconsistent verdict is a little bit off base, if I can use that term. And there's other problems here. I think, Judge Straunch, you've already got into the fact that there's different testimony regarding different people and here's the key points at different times. That's the key to this case. So if the court might recall, I gave you a chart in the appellate briefs kind of talking about where the verdicts were and how it came down. And we know that with respect to professional negligence, the jury was only considering, with respect to these three individuals, a certain time frame. And that was a time frame that was in the facts of the case prior to 5 a.m. on April 27th. So any finding in that regard is limited to that time frame. Now you notice that that limitation is not in the questions regarding deliberate indifference. So in other words, the jury could have clearly looked at conduct after 5 a.m. and found that there was deliberate indifference there with respect to all three individuals. And Judge Straunch, you went into some of it already, but it's in our brief because they all had conduct after that time period. Whereas you could have a consistent finding of deliberate indifference, both by way of culpability and also by way of proximate cause, that would be consistent with a finding of no medical malpractice for conduct that was earlier. And I could give you a lot more, but basically that takes care of the first two arguments. I don't know if the court has questions of that. Let's just make sure we're clear and be a little bit repetitive about our expert. Again, Judge Straunch, you stole my thunder, and thank you for that. But on redirect, a judge striked that the expert witness for our client made clear that, wait a minute, my statements about whether or not somebody could have survived, that depends on whether or not they were taken to the hospital. And we know that after a certain timeframe, ironically, after 5 a.m., including on the date in question, our expert testified that if my decedent client was taken to the hospital, you could have avoided the cardiac arrest and you could have avoided the death. So the issue is not preserved with respect to inconsistent verdicts. And, you know, it might have been a different story. Let's do apples to apples, if I can use the phrase. They didn't, the same allocation that they're arguing here today, they don't have in the verdict form. If you want, and the law is pretty specific on that, if you want special questions, you have to ask for them. And if you have jeopardy that results because you didn't ask for special questions, it's on you. It's not on the district court. And really that's what's going on. So if we really wanted to divide all this out, you would add two separate questions for timeframes for deliberate indifference, before 5 a.m. and after, and then two separate questions for medical malpractice before and after. And then maybe you could take this Rubik's cube of an argument and line it up and say, okay, perhaps there's something that's inconsistent. But here, there are factors missing from that equation. So Judge Jarboe got it right. Her opinion, if I could say, is pretty on point. And at one point in my brief, I asked the court to simply adopt it. And I hope that's a compliment to Judge Jarboe. This is a 12-day trial. And she lived with it. She saw what was going on, all the things that this court knows. I don't know if the court is concerned with the second two arguments. But I'll make them very brief. The third argument regarding the crying, for 15 minutes on a 12-day trial, there was no contemporaneous objection. So tell me exactly how it was that prejudicial if defense counsel didn't pick up on it when it was going on. I mean, I think that's fair, although maybe not the best conduct by trial counsel. I am confident that the senior attorney at trial probably had a discussion with the junior attorney at trial. And I doubt if that will ever happen again, if I may.  Okay. And so in any event, there can be no abuse of discretion on that. Again, the court knows this. There was an instruction about you have to decide without bias or sympathy. Yes, Your Honor. The standard instruction. But not an instruction that called more attention. Correct. So to be clear for the record, there was a request for a special curative instruction. And Judge Jarbo, as oftentimes judges do for those of us who have been practicing a long time, oftentimes the court figured out that that would bring more attention to the situation than less. And so the court opted for the standard instruction saying you can't use sympathy. So I agree, Your Honor, just to fill that out a little bit. And our review would be for abuse of discretion, and these are typically within the sound discretion of the trial court. Right. And again, the trial judge can view the reaction of the jurors that we can't on a cold record. So the trial judge has that discretion. And the last argument deals with claimed misconduct by one jury during voir dire. And I want to stress that last point. The argument is, I think, fairly perfunctory. The claim is that this one juror who acted as the foreman didn't answer questions directly and honestly. But, again, the argument is limited to voir dire. Nothing more than that. And the court knows from the briefing that this question was not asked to the juror. The argument you had before you is that inferentially, by way of alchemy or osmosis, or take your pick of metaphors, that somehow, some way this juror should have picked up on a disclosure that he wasn't asked about because other people were talking about what happened with their family members. That makes no legal or logical sense, if I could. And I think that that one's pretty clear as well. On that last argument, too, we gave the court questioning by the defense attorney when they were questioning about the family members. And to try to figure out what the concern was. And if you recall from the briefing, the principal concern based on his follow-up was that these jurors had some experience through a family member with people that had been incarcerated because of alcohol. That was his concern more than, quote, criminal conviction. And I think that's pretty, I mean, I'm going contextual, but I think you can read that into the questioning that he asked. So, unless the court has any questions, I'd ask the court to affirm. Anything further, Judge Gilman? Nothing further. Thank you. Thank you, Your Honors. Thank you. Your Honors, I'd waive any rebuttal. We thank you both for your arguments. In a difficult case, we would all agree it will be taken under advisement and an opinion issued in due course. Thank you. Thank you. You may call the next case.